IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINENS HOLDINGS CO., et al.,[1] | ) | Case No. 08-10832 (CSS) |
| | ) | |
| Debtor. | ) | Objection Deadline: February 10, 2010 at 4:00 p.m. |
| | ) | Hearing Date: February 19, 2010 at 10:00 a.m. |

## DEBTORS' MOTION TO APPROVE MODIFICATIONS TO THIRD AMENDED JOINT PLAN OF REORGANIZATION

Linens Holding Co., and its subsidiary debtors and debtors-in-possession (the "Debtors") in these jointly-administered chapter 11 bankruptcy cases, hereby file this motion (the "Motion") seeking approval of modifications (the "Modification") to the *Debtors' Third Amended Joint Plan of Reorganization, as Modified* [Docket No. 4488] (the "Confirmed Plan").[2] In support of the relief requested in the Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief requested herein are section 1127 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Linens Holding Co. (2917), Linens 'n Things, Inc. (3939), Linens 'n Things Center, Inc. (0138), Bloomington, MN., L.T., Inc. (8498), Vendor Finance, LLC (5543), LNT, Inc. (4668), LNT Services, Inc. (2093), LNT Leasing II, LLC (4182), LNT West, Inc. (1975), LNT Virginia LLC (9453), LNT Merchandising Company LLC (2616), LNT Leasing III, LLC (3599) and Citadel LNT, LLC (2479).

[2] Capitalized terms used herein, but not defined, are ascribed the definitions in the Confirmed Plan.

## GENERAL BACKGROUND

2. On May 2, 2008 ("Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are currently functioning as debtors-in-possession.

3. As of the Petition Date, the Debtors, together with their Canadian Subsidiaries (collectively, "Linens Companies"), comprised North America's second largest specialty retailer of home textiles (including bedding, towels, window treatments and table linens), housewares and home accessories (including cookware, dinnerware, glassware and small appliances). The Linens Companies were one of the largest purchasers of home furnishings in the United States, with a vendor base of approximately 1,000 suppliers.

4. Since the Petition Date, and based upon the authority granted to them pursuant to a series of prior orders entered by this Court, the Debtors conducted several rounds of store closing sales which, as of December 31, 2008, resulted in a chain-wide liquidation of the Debtors' inventory and a closure of all of the Debtors' retail locations in the United States.

## THE CONFIRMED PLAN

5. On January 26, 2009, the Court approved the *Disclosure Statement in Support of the Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 3473]. On June 15, 2009, the Court confirmed the Confirmed Plan.

6. Pursuant to the Confirmed Plan, the Effective Date cannot occur unless the Debtors hold cash sufficient to satisfy all Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims. (Art. VIII., A.3.). Moreover, the Confirmed Plan imposes a deadline by which the Effective Date (the "Effective Date Deadline") must occur or else the Confirmed Plan becomes null and void. (*Id.*). That deadline, originally set as August

30, 2009, has been extended by agreement of the parties and Court Order and is currently set to expire on January 31, 2010.

7. The Confirmed Plan provides, consistent with Bankruptcy Code section 1129(a)(9), that Allowed Administrative Claims can be "satisfied" either through full cash payment or other terms agreed to between the holder and the Debtors. (Art. II, A.). The Confirmed Plan also provides for Allowed Priority Tax Claims to be paid through installment payments over a period not to exceed 5 years after the Petition Date (Art. II, B.) and for Allowed Other Priority Claims to be either fully paid in cash or provided other treatment that leaves such claims unimpaired (Art. II, C.).

8. The Debtors estimate that the total amount of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims will be approximately $40,000,000. When crafting the Confirmed Plan, the Debtors anticipated satisfying these claims through cash sourced from the Senior Noteholder Contribution Amount and Avoidance Recoveries. However, the process of collecting preferences has proven slower than expected and the Debtors do not anticipate generating sufficient proceeds to satisfy such claims in cash in the foreseeable future.

9. Since the initial Effective Date Deadline of August 30, 2009, the Debtors have requested multiple extensions thereof from the Senior Noteholders Committee and the Creditors' Committee. The Senior Noteholders Committee consented to more than 5 months of extensions, which has required the Senior Noteholders to continue financing the Debtors' wind-down and professional fees from Senior Noteholders' cash collateral. Given the delays in going effective – and the inherent added costs borne by the Senior Noteholders – the Senior Noteholders Committee and the Debtors have agreed upon the modifications to the Confirmed Plan embodied
3

in a term sheet (the "Term Sheet") attached hereto as Exhibit A (the "Modifications") and have conditioned further extensions of the Effective Date Deadline on approval and implementation of the Modifications.

10. Since November 2009, the Debtors have engaged in extensive discussions with a number of holders of Allowed Administrative Claims regarding the treatment proposed in the Term Sheet. The Debtors' professionals explained to those creditors that, in the Debtors' view, the Modifications embodied a higher recovery scenario for those creditors than would be achieved in a chapter 7 conversion. As part of the Debtors' efforts, on December 16, 2009, they held a global conference call with counsel for a substantial mass of Allowed Administrative Claim Holders and presented the Term Sheet. Counsel participating on that call, as well as others representing large Allowed Administrative Claimants, have been supportive of the Modifications. No party has objected to the Modifications, nor voiced any opposition thereto including representatives of the Creditors' Committee.

## PROPOSED MODIFICATIONS

11. The Confirmed Plan authorizes the Debtors, "in consultation with the Senior Noteholders Committee and the Creditors' Committee, and upon order of the Bankruptcy Court, [to] amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code." (Art. XI. C.). Moreover, the Confirmation Order provides as follows:

> After the entry of this Confirmation Order and prior to "substantial consummation" (as such term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, any Debtor, the LNT Liquidating Trust or the Liquidating Trustee may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any effect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Confirmation Order, **and such matters as may be necessary to carry out the purposes and the effects of the Plan**, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list

4

only, and the solicitation of all creditors and other parties-in-interest shall not be required.

Confirmation Order ¶ 47 (emphasis added).

12. By this Motion, the Debtors are (a) seeking authority to make the Modifications to the Confirmed Plan that are summarized below,[3] and (b) requesting that the Modifications be deemed accepted by creditors and equity security holders who previously accepted the Confirmed Plan:

    i. *LNT Liquidating Trust Assets*. Upon the Effective Date, all Avoidance Actions, and all Avoidance Recoveries already received by the Debtors, will be transferred to the LNT Liquidating Trust and the Liquidating Trustee will be authorized to pursue all Avoidance Actions (as well as other Liquidating Trust Assets).

    ii. *Trust Interests*. Upon the Effective Date, or as soon as practicable thereafter, the LNT Liquidating Trust will issue the following interests in the LNT Liquidating Trust (the "Trust Interests"), entitling holders thereof to the following, respective, net proceeds from the LNT Liquidating Trust (the "Proceeds"):

- "**Tier 1 Interests**" will be entitled to receive all net proceeds of Avoidance Recoveries, capped at $3,750,000.

- "**Tier 2 Interests**" will be entitled, after Tier 1 Interests are paid in full, to receive all net proceeds of Avoidance Recoveries, capped at the sum of (i) $697,552; plus (ii) approximately $700,000 (the "Reimbursement Expenses").

- "**Tier 3 Interests**" will be entitled, after Tier 1 and 2 Interests are paid in full, to receive all net proceeds of Avoidance Recoveries divided between the following,

---

[3] A blackline of the Confirmed Plan containing the Modifications is attached hereto as Exhibit C.

RLF1 3524296v.5

fifty percent (50%) to the Senior Noteholders and fifty percent (50%) to the holders of the Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims, until the holders of such Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims are paid in full.

- "**Tier 4 Interests**" will be entitled, after Tier 1, 2, and 3 Interests are satisfied, to receive all remaining net proceeds of Avoidance Recoveries.

iii. *Treatment of Class 2 (Senior Note Claims)*. Each Holder of a Class 2 Allowed Senior Notes Claim will receive its pro rata share of (i) $3,000,000 in cash distributed on the Effective Date, (ii) all Tier 1 Interests, (iii) all Tier 2 Interests, (iv) 50% of Tier 3 Interests, and (v) 50% of Tier 4 Interests. The Senior Noteholders' Plan Contribution Amount will be fixed at $3,000,000.

iv. *Treatment of Class 3 (General Unsecured Creditors)*. Each Holder of an Allowed General Unsecured Claim will be entitled to a pro rata share of 50% of the Tier 4 Interests.

v. *Treatment of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims*. Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims will be entitled to their pro rata share of (i) the Senior Noteholders' Plan Contribution Amount of $3,000,000 to be distributed on the Effective Date or as soon as practicable thereafter, and (ii) 50% of Tier 3 Interests (the "Compromise Treatment").

RLF1 3524296v.5

# RELIEF REQUESTED

## A. THE MODIFICATIONS SATISFY THE REQUIREMENTS OF BANKRUPTCY CODE § 1127(b).

13. By this Motion, the Debtors are seeking entry of an Order, pursuant to Bankruptcy Code section 1127(b), approving the Modifications to the Confirmed Plan as set forth in the blacklined markup of the Confirmed Plan, annexed hereto as Exhibit C.

14. Post-confirmation plan modifications under Bankruptcy Code section 1127(b) require (a) that "substantial consummation" has not yet occurred,[4] (b) "circumstances [that] warrant such modification," and (c) "that such plan as modified [] meet the requirements of sections 1122 and 1123." 11 U.S.C. § 1127(b). The Modifications satisfy these requirements.

### 1. The Circumstances Warrant The Modifications.

15. The Debtors have concluded that the Confirmed Plan as amended by the Modifications (the "Modified Confirmed Plan"), represents the best recovery scenario for their estates and creditors.

16. The need for the Modifications arises from unforeseen events outside of the Debtors' control. In formulating the Confirmed Plan and the recoveries therein, the Debtors and the Creditors' Committee projected Avoidance Recoveries based on analyses prepared with the assistance of estate professionals, including their historical experience in collecting similar claims in retail cases. However, based on events transpiring in the chapter 11 cases, including disputes with the Senior Noteholders Committee, and the recent unprecedented market events that have constrained many defendants' cash positions, defendants have largely refused to

---

[4] The Confirmed Plan has not been substantially consummated. The Effective Date has not occurred and, therefore, the debtors-in-possession continue to possess all their assets, the same management team and board of directors continues to govern and operate the Debtors, and no distributions have been made to creditors pursuant to the Confirmed Plan.

7

negotiate an immediate settlement, preferring instead to litigate and delay any potential payment. Accordingly, the projected collection timeline has been materially delayed. As a result, while the Debtors originally expected large cash proceeds to be received before the Effective Date, the Debtors believe they will receive them after the Effective Date. The Modifications are necessary to allow time for an efficient realization of these proceeds. See In re Gene Dunavant and Son Dairy, 75 B.R. 328, 334 (M.D. Tenn. 1987) (affirming bankruptcy court's approval of plan modifications and finding that such modifications were warranted where "the debtor suffered a loss of revenues so serious as to render the original plan unworkable," which was not "the result of any culpable act or omission on the part of SBC, the debtor or any other party.").

17. Moreover, without the Modifications, the Confirmed Plan will not go effective within the Effective Date Deadline, and will be rendered null and void. Inasmuch as the Debtors do not believe that any alternative plan of liquidation is possible at this time – nor that any other plan proponents will emerge – if the Confirmed Plan is rendered null and void, the chapter 11 cases likely will convert to chapter 7. The Debtors have concluded that conversion would result in lower recoveries for administrative and priority creditors. The Modifications, thus, are necessary to maximize recoveries for the Debtors' creditors and avoid a conversion of these cases to chapter 7.

### 2. The Modified Confirmed Plan Fully Complies With Bankruptcy Code Sections 1122 And 1123.

18. In the Confirmation Order, the Court found that "Plan satisfies all of the elements required by section 1129 of the Bankruptcy Code." (¶ 13). Moreover, the Court found that "[t]o the extent that any Class was impaired under the Plan and did not vote to accept the Plan . . . that the Debtors have satisfied the 'cramdown' requirements of sections 1122, 1123 and 1129(b) of the Bankruptcy Code with respect to such class." (*Id.*).

19. As the Court previously held that the Confirmed Plan complies with Bankruptcy Code section 1122 and the Modifications do not alter the classification of claims, the Modified Confirmed Plan continues to comply with Bankruptcy Code section 1122.

20. Additionally, the Modified Confirmed Plan fully complies with the requirements of Bankruptcy Code section 1123. Bankruptcy Code section 1123 identifies requirements that must exist in all plans, which the Court found to exist in the Confirmed Plan (*Id.*). The Modified Confirmed Plan contains those same elements including, among other things, by continuing to provide the same treatment to all claims classified together, § 1123(a)(4), and maintaining the same means for implementation of the Modified Confirmed Plan through the LNT Liquidating Trust's liquidation of all remaining assets and claims, § 1123(a)(5)).

## B. THE MODIFICATIONS DO NOT ADVERSELY IMPACT TREATMENT OF ACCEPTING CLASSES; NO RESOLICITATION IS NEEDED.

21. The Debtors request approval of the Modifications without need for further solicitation of votes.

22. Courts addressing this issue have only required resolicitations of modifications that materially and adversely affect or change the treatment of voting creditors. See Enron Corp v. New Power Co. (In re New Power Co.), 438 F.3d 1113, 1117-18 (11th Cir. 2006) (court may deem holder's prior vote of acceptance for original plan as acceptance of a modified plan even without resoliciting "unless the modification materially and adversely changes the way that claim or interest holder is treated"); In re Federal-Mogul Global Inc., 2007 WL 4180545 at *38 -39 (Bankr. D.Del. Nov. 16, 2007) (order confirming plan and approving modifications without resolicitation); In re McCommas LFG Processing Partners, LP, 2007 WL 4234139, at *3 (Bankr. N.D. Tex. Nov. 29, 2007) ("[p]ursuant to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019, all acceptances of the Plan prior to such Modifications are deemed

9

RLF1 3524296v.5

acceptances of the Plan"); In re Celotex Corp., 204 B.R. 586, 608-09 (Bankr. M.D. Fla. 1996) (holding that creditors and equity holders who had accepted debtor's plan of reorganization were deemed to have accepted modifications that did not adversely change treatment under plan of any claims or interests).

23. The Modifications do not materially and adversely affect or change the treatment of voting creditors for the following reasons:

- Class 1 – Other Secured Claims. Treatment unchanged.

- Class 2 – Senior Notes Claims. Under the Confirmed Plan, this class was to receive, among other things, (a) approximately 25% of pre-Effective Date Avoidance Recoveries and (b) 50% of post-Effective Date Avoidance Recoveries and other litigation proceeds. Under the Modified Confirmed Plan, this class will receive, among other things, (i) all Tier 1 Interests, (ii) all Tier 2 Interests, (iii) 50% of Tier 3 Interests, and (iv) 50% of Tier 4 Interests. The Debtors contend that this change will not materially adversely affect the recovery for Senior Noteholders, but will only alter the timing of receipt of payments. The Senior Noteholders Committee – representing Holders of a majority of the Senior Notes Claims – agrees with and supports the Modifications. Additionally, pursuant to the Modifications, the Senior Noteholders will immediately be paid $3,000,000, which was not available for distribution to Senior Noteholders under the Confirmed Plan.

- Class 3 – General Unsecured Claims. Under the Confirmed Plan, this class was to receive 50% of all Avoidance Recoveries and other litigation proceeds, after (i) all Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims Administrative Expense Claims were paid in full, (ii) the Senior Noteholders were repaid the Reimbursement Expenses, and (iii) and the Senior Noteholders received a share of Avoidance Recoveries equal to roughly 25% of the total Avoidance Recoveries collected before the Effective Date (not to exceed $6,000,000). Under the Modified Confirmed Plan, this class will receive 50% of Tier 4 Interests, entitling it to 50% of all Avoidance Recoveries and other litigation proceeds, after (i) all Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims Administrative Expense Claims are paid in full, (ii) the Senior Noteholders are repaid the Reimbursement Expenses, and (iii) the Senior Noteholders receive a share of Avoidance Recoveries equal to (x) $3,750,000, the amount to which the Senior Noteholders are entitled under the Final DIP Order based on their asserted superpriority claim, plus (y) the same amount of proceeds used to satisfy Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims Administrative Expense Claims. The Debtors contend that this change will not materially adversely affect the recovery on General Unsecured Claims because any ultimate recovery on General Unsecured Claims was

then and still is dependent on litigation recoveries, and payment in full of administrative and priority claims. The modifications do not materially change these risks.

- Class 4 – Equity Interests. Treatment unchanged.

- Class 5 – Intercompany Claims. Treatment unchanged.

- Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims. (These unclassified claims are not entitled to, and did not, vote on the Confirmed Plan). Their treatment remains unchanged in the Modified Confirmed Plan because the Confirmed Plan allows the Debtors to negotiate treatment with each creditor. Through the Debtors' discussions described above, and the procedures proposed herein, the Compromise Treatment embodies those negotiations and complies with the consensual treatment in the Confirmed Plan.

24. Because the Modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor, pursuant to Bankruptcy Code section 1127(b) and Bankruptcy Rule 3019, the Modifications do not require additional disclosure under Bankruptcy Code section 1125 or the resolicitation of acceptances or rejections of the Plan under Bankruptcy Code section 1126, nor do they require that holders of Claims against or Equity Interests in the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan as filed with the Bankruptcy Court. Disclosure of the Modifications constitutes due and sufficient notice thereof under the circumstances. Accordingly, the Modified Confirmed Plan is properly before the Court and all votes cast with respect to the Confirmed Plan shall be binding and shall be deemed to be cast with respect to the Modified Confirmed Plan.[5]

---

[5] Moreover, the Debtors contend the Modified Confirmed Plan is confirmable over a dissenting vote by Class 3 – General Unsecured Claims, pursuant to 11 U.S.C. § 1129(b).

## C. APPROVAL OF CONSENT FORM AND CONSENT AND MODIFICATION PROCEDURES

25. As set forth above, the Debtors have discussed the Modifications, including the Compromise Treatment, with a great number of holders of Allowed Administrative Claims. Moreover, the Debtors will transmit the consent form attached hereto as <u>Exhibit B</u> (the "<u>Consent Form</u>") to each known holder of an unpaid Administrative Claim, Priority Tax Claim, and Other Priority Claim, which Consent Form (a) will be sent via first class mail to the last known address for such holder and its counsel, as well as by facsimile and e-mail, where available, (b) explains in detail the Compromise Treatment, (c) provides contact information for any holder to discuss the Compromise Treatment with the Debtors' professionals, and (d) sets a deadline 20 days (the "<u>Voting/Objection Deadline</u>") after transmission of the Consent Form for any holder to return the Consent Form to Debtors' counsel via mail, in a postage-prepaid, self-addressed envelope, electronic mail, hand delivery, or facsimile, indicating whether such holder consents or does not consent to the Compromise Treatment.[6]

26. The Debtors will also provide notice of this Motion and the Modifications, pursuant to and in accordance with the Confirmation Order, on the Bankruptcy Rule 2002 service list. (¶ 47). The Modifications have already been discussed with, and expressly approved by, the Senior Noteholders Committee.

27. The Debtors are also creating a toll-free number for inquiries regarding the Compromise Treatment. The toll-free number will have a voicemail box for messages and the Debtors intend to promptly return the calls of any inquiring holders. A targeted call campaign

---

[6] Any Consent Form or objection must be served so as to be actually received by Debtors' counsel on or before the Voting/Objection Deadline.

will also be initiated by the Debtors, in which the Debtors will call any holder[7] of an unpaid Administrative Claim, Priority Tax Claim, and Other Priority Claim for which a telephone number is available and (a) confirm the holder received the Consent Form, (b) ask if the holder has any questions, and (c) urge the holder to return the Consent Form.

28. The Debtors submit the approval of the Consent Form and deemed consent procedures is appropriate in these cases. The Debtors have simplified the procedure for communicating consent or non-consent to the Compromise Treatment to holders of administrative and priority claims. The Consent Form indicates it may be returned to the Debtors by (a) mail, in a postage-prepaid, self-addressed envelope provided with the Consent Form, (b) facsimile, via a facsimile number listed on the Consent Form, (c) electronic mail, via an e-mail address provided on the Consent Form, or (d) hand delivery, to an address indicated on the Consent Form. In addition, the Consent Form indicates clearly, in bold capital letters, the Voting/Objection Deadline and the Debtors' intent to request that holders of administrative and priority claims not returning Consent Forms be deemed to consent to the Compromise Treatment. In *Teligent*, the Bankruptcy Court deemed holders who did not return consent forms to consent to modified treatment under substantially similar procedures. See In re Teligent, Inc., 282 B.R. 765, 771-73 (Bankr. S.D.N.Y. 2002).[8]

D. **APPROVAL OF OBJECTION PROCEDURES**

29. Because Bankruptcy Code section 1127(b) provides that a plan, as modified, becomes the plan if the "court, after notice and a hearing, confirms such plan as modified, under

---

[7] Calls will be placed to counsel when the holder is represented by counsel in these cases.

[8] The United States Bankruptcy Court for the District of Delaware has held that, in appropriate circumstances, a creditor's agreement may be implied from his conduct. See, e.g., In re Trans Word Airlines, Inc., Case No. 01-0056, Hr'g Tr. at 12-13 (Bankr. D. Del. June 14, 2002). Relevant transcript pages are attached hereto as Exhibit D.

section 1129 of [the Bankruptcy Code]," Bankruptcy Rule 3020(b)(1) provides guidance in setting an objection deadline with respect to the modifications sought by the Debtors. Specifically, Bankruptcy Rule 3020(b)(1) provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court."

30. The Debtors request that the Court set 4:00 p.m. (prevailing Eastern time) on February 10, 2010 (the "Modified Plan Objection Deadline") as the last date and time for (a) serving a Consent Form on Debtors' counsel and/or (b) filing and serving an objection to the approval of the Modifications. Moreover, the Debtors request that the Court deem any party not timely voting and/or objecting as having consented to the relief sought herein including, without limitation, to the compromise Treatment and the Modifications.

## NOTICE

31. Notice of this Motion, including all exhibits, shall be provided to: (i) the U.S. Trustee; (ii) the Creditors' Committee; (iii) counsel to the indenture trustee for the Debtors' outstanding bond issuance; (iv) counsel to the Senior Noteholders' Committee; (v) counsel to the Debtors' equity sponsors; (vi) all parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (vii) holders of unpaid Administrative Claims, Priority Tax Claims, and Other Priority Claims as well as known counsel to holders of such claims. In addition, the Debtors shall provide a Consent Form and a postage-prepaid return envelope to holders of unpaid Administrative Claims, Priority Tax Claims, and Other Priority Claims as well as known counsel to holders of such claims. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

32. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit E</u>: (i) determining that the Modifications do not require resolicitation of any Class of creditors or Equity Interests; (ii) authorizing the Debtors to make the Modifications and deeming the Modifications to be accepted by all Creditors that voted to accept the Confirmed Plan; (iii) approving the procedures for establishing the consent of holders of Administrative Claims, Priority Tax Claims, and Other Priority Claims to different treatment consistent with the Confirmed Plan; and (iv) granting such other relief as the Court deems just and proper.

Dated: January 20, 2010
      Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

RLF1 3524296v.5